UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FISHER ASSET MANAGEMENT, LLC, | Case No. 26-cv-04469-PCP |
| Plaintiff, | |
| v. | **ORDER GRANTING TEMPORARY RESTRAINING ORDER** |
| FISHER-INVESTMENTS-EUROPE.ORG, et al., | Re: ECF No. 4 |
| Defendants. | |

In this trademark-infringement and cybersquatting action, plaintiff Fisher Asset Management, LLC seeks a temporary restraining order against the registrants of the domain names "fisher-investments-europe.org" and "fisherinvestmentseurope.net" and all other parties who are in active concert or participation with such registrants. Fisher's verified complaint alleges that these domain names infringe and dilute Fisher's registered "Fisher Investments" mark in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(c), and constitute "cybersquatting" in violation of the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d). For the following reasons, Fisher's *ex parte* application for a temporary restraining order is granted.

**BACKGROUND**

Founded in 1979, Fisher—widely known as "Fisher Investments"—provides investment-management and investment-advisory services to private clients and institutional investors around the world.[1] Fisher and its affiliates "manage[] over $387 billion in assets and have developed relationships with more than 200,000 clients globally, reflecting decades of trust, reputation, and

---

[1] These facts are established by Fisher's verified complaint, the exhibits thereto, and the declarations of Fred Harring and Rebecca Rhym, which were filed in connection with Fisher's application for a temporary restraining order.

United States District Court
Northern District of California

goodwill associated with" the Fisher Investments name.

To protect that reputation and goodwill, Fisher has registered marks for "Fisher Investments" with the U.S. Patent and Trademark Office (PTO). Two of those marks are relevant here. First, Fisher owns U.S. Registration No. 3,103,881 for the standard-character mark FISHER INVESTMENTS for "investment management and investment advisory services." Second, Fisher owns U.S. Registration No. 5,605,365 for the service mark FISHER INVESTMENTS for "investment advisory services" and "investment management." Both registrations remain valid today. Fisher alleges that its "existing and prospective clients rely on" these marks "to identify Fisher's legitimate investment-advisory services, market commentary, client resources, and communications." These include "a variety of global services," including "services offered in Europe," such as "Fisher Investments UK" and "Fisher Investments Europe Limited," a wholly owned subsidiary of Fisher.

In recent months, unknown third parties registered two domain names referring to "Fisher Investments."

The first, "fisher-investments-europe.org," hosts a website styled as the "official website" for "Fisher Investments Europe" in France. The website purports to be for a business-consulting firm offering services including operational analysis, custom growth strategies, internal-process optimization, digital-transformation support, organizational-performance assessments, and post-project support. The website invites users to input their email addresses to begin receiving information or to request a consultation. Various pages on the website state that "Fisher Investments Europe" operates the website and its collection of users' personal data. Fisher represents that it did not authorize the website's creation, is not affiliated with its creator, and is unaware of any entity in France offering the services listed on the website under the "Fisher Investments" name.

The second domain name, "fisherinvestmentseurope.net," also purports to be an official website for "Fisher Investments Europe." The website—which offers content in English, French, and German—advertises services relating to wealth-management technology, Artificial Intelligence-based trading systems, brokerage infrastructure, cryptocurrency, and asset

United States District Court
Northern District of California

United States District Court
Northern District of California

management, among others. The website invites users to create an account by providing their name, email address, and telephone number, and it states that it collects other personal and technical data from users. Again, Fisher represents that it does not own or have any affiliation with this website, the creation of which it did not authorize.

Due to Fisher's concerns that its existing or potential customers might believe these domain names and websites are operated or endorsed by Fisher, and might therefore provide personal information to the unknown registrants of the domain names, Fisher has repeatedly attempted to halt the operation of these domain names and websites.

Soon after discovering the domain names, Fisher submitted an abuse complaint to Dynadot Inc., the publicly listed registrar for both domain names, which is based in San Mateo, California. Fisher later submitted further notices and complaints to Dynadot by email and using the designated form on Dynadot's website. But Dynadot has neither disabled the domain names nor transferred them to Fisher, insisting that it lacks authority to decide ownership of the domain names. Dynadot has also declined to identify or provide contact information for the domain names' registrants absent a subpoena or court order, citing its privacy policy. As a result of Fisher's complaints to Dynadot, browsers and security services have flagged the websites as deceptive or as associated with suspected phishing schemes, but the websites remain operational and available to the public.

Fisher has also sent notices of alleged trademark infringement and cybersquatting to the email addresses listed on the website hosted at the domain names. Fisher represents that it has not received any response. Instead, Fisher received a notification from its email provider that its communications could not be delivered.

Having failed to secure the suspension of the domain names or to unmask their registrants through other means, Fisher commenced this action on May 13, 2023. Its verified complaint asserts claims directly against the domain names "fisher-investments-europe.org" and "fisherinvestmentseurope.net" pursuant to the *in rem* provisions of the ACPA, 15 U.S.C. § 1125(d)(2). Though all of the relief Fisher requests is available under the ACPA, Fisher also asserts claims for trademark infringement and trademark dilution under the Lanham Act, *id.*

§§ 1114(1) and 1125(c). Fisher seeks a declaration "that the registration and use of the [allegedly] [i]nfringing [d]omain [n]ames violate Fisher's rights under the ACPA" and an injunction either transferring the domain names to Fisher or ordering the forfeiture or cancellation of the domain names.

**LEGAL STANDARD**

The standard for issuing a temporary restraining order (TRO) is largely identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). A party seeking such relief usually must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[2] But this standard applies only to "prohibitory injunctions, which aim to preserve the status quo by preventing a party from taking action." *Youth 71Five Ministries v. Williams*, 160 F.4th 964, 978 (9th Cir. 2025) (citation modified). Where a movant instead requests a "mandatory injunction," which "alters the status quo by requiring a party to take action," the movant must satisfy "a higher burden" and "show [that] the facts and law *clearly* favor the mov[ant]." *Id.* (citation modified).

Although the substantive standards for both motions are similar, the timeframe for a temporary restraining order is different. While a preliminary injunction remains in effect pending final resolution of the litigation, "a TRO 'should be restricted to … preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)). Federal Rule of Civil Procedure 65(b)(1) allows a temporary restraining

---

[2] "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two Winter factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). Because the Court concludes that Fisher has demonstrated a clear likelihood of success on the merits, the Court need not determine whether Fisher satisfies this alternative standard.

order to be issued without notice to the opposing party—i.e., *ex parte*—only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

ANALYSIS

As an initial matter, Fisher has satisfied the requirements for issuance of an *ex parte* order. The affidavit of its counsel in this action demonstrates that Fisher will suffer immediate and irreparable reputational injury before the registrants of the allegedly infringing domain names can be heard in opposition, primarily because such registrants have concealed their identities in a manner that precludes service of process. Fisher's counsel has also attested in writing that Fisher has "attempted to provide notice" to interested parties "through every available channel," including by submitting abuse complaints and formal notices to Dynadot and to the email addresses listed on the websites associated with the allegedly infringing domain names. *See Starcom Mediavest Grp., Inc. v. Mediavestw.com*, No. 10-CV-04025-LHK, 2010 WL 3564845, at *1 (N.D. Cal. Sept. 13, 2010) (granting *ex parte* relief under similar circumstances).

Fisher has also satisfied each of the *Winter* factors.

## I.     Likelihood of Success on the Merits

Fisher seeks to compel the transfer of the allegedly infringing domain names from the current registrants to Fisher. Accordingly, Fisher requests a mandatory injunction and must show that the facts and law clearly favor emergency relief. *See Youth 71Five*, 160 F.4th at 978. It has done so.[3]

To succeed on its cybersquatting claim under the ACPA in this *in rem* action, Fisher must show that (1) it owns a valid mark; (2) the domain names against which the action is brought violate Fisher's rights to the mark; (3) those domain names are located in this judicial district; and

---

[3] Because the Court concludes that emergency relief is appropriate based on Fisher's cybersquatting claim under the ACPA, it need not consider whether the facts and law clearly favor relief based on Fisher's trademark-infringement and -dilution claims under the Lanham Act.

5

United States District Court
Northern District of California

(4) Fisher has through due diligence been unable to find a person who could be a defendant or would be unable to obtain *in personam* jurisdiction over such a person. 15 U.S.C. § 1125(d)(2)(A); *see Starcom*, 2010 WL 3564845, at *1.[4] Fisher has made a clear showing of each element.

First, Fisher owns two registered marks for "Fisher Investments," which are presumptively valid. *See* 15 U.S.C. §§ 1057(b), 1115(a); *KP Permanent Make-Up v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005).

Second, the use of the domain names "fisher-investments-europe.org" and "fisherinvestmentseurope.net" to host websites for "Fisher Investments Europe" very likely violates Fisher's rights to its registered marks. Unauthorized use of a mark infringes the owners' protectable interest in the mark where it "is likely to cause consumer confusion." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). Here, the allegedly infringing domain names include Fisher's mark in its entirety, merely adding the word "Europe," hyphens, and ".org" or ".net." And the websites hosted at the domain names prominently display "Fisher Investments Europe" while advertising services similar or identical to Fisher's own investment-management and -advisory services. The use of Fisher's mark in full to promote services of the type offered by Fisher bears a clear risk of confusing actual or potential clients of Fisher. *See Starcom*, 2010 WL 356485, at *1 (finding likelihood of success where alleged cybersquatter used domain name "mediavestw.com" to mimic plaintiff's "MEDIAVEST" mark and "mediavestww.com" website); *Whaleco Inc. v. dltemuapp.com*, 2023 WL 7413670, at *1–2 (D. Ariz. Nov. 9, 2023) (finding likelihood of success on the merits of cybersquatting claim where

---

[4] Fisher and some other courts in this district have suggested that plaintiffs in *in rem* actions under the ACPA must show that the registrant of an allegedly infringing domain name acted with bad faith. *See, e.g.*, *Con-Way Inc. v. CONWAYRACING.COM*, No. 08-cv-4263, 2009 WL 2252128, at *3–4 (N.D. Cal. July 28, 2009). This Court disagrees. The text of the ACPA makes clear that a showing of bad faith is required only when the plaintiff seeks to hold "[a] person … liable" in an *in personam* action under subsection (1) of the ACPA. *See* 15 U.S.C. § 1125(d)(1)(A)(i). By contrast, the separate provisions concerning *in rem* proceedings under subsection (2) make no mention of bad faith. *See* 15 U.S.C. § 1125(d)(2). And the ACPA elsewhere highlights that subsections (1) and (2) create distinct causes of action, further suggesting that the former's bad-faith requirement does not carry over to the latter. *See* 15 U.S.C. § 1125(d)(3) (referring separately to "[t]he civil action established under paragraph (1) and the in rem action established under paragraph (2)").

infringing domain names included TEMU trademark and logo with slight variations); *Con-Way Inc. v. CONWAYRACING.COM,* No. 08-cv-4263, 2009 WL 2252128, at *3 (N.D. Cal. July 28, 2009) (finding that the domain name "CONWAYRACING.COM" was "confusingly similar" to the "CON-WAY" mark owned by a company that sponsored a NASCAR racing team).

Third, the registrar of the allegedly infringing domain names—Dynadot—is located in this judicial district. The verified complaint alleges, and the available records concerning the domain names reflect, that Dynadot is based in San Mateo, California, which is in this district.

Finally, Fisher has shown that it will very likely be unable, through due diligence, to find a person who could be a defendant. Despite Fisher's repeated requests, Dynadot has not disclosed the identities of or contact information for the registrants of the allegedly infringing domain names. And though Fisher sent a notice of the alleged violation and its intent to file this action to the email addresses listed on the websites hosted at the domain names, Fisher received bounce-backs stating that its emails could not be delivered. Accordingly, the only available contact information for the registrants is outdated. *See Starcom*, 2010 WL 3544845 (finding likelihood of success on this element where plaintiff was unable to contact unidentified domain-name registrant).[5] In any case, even if Fisher could identify potential defendants, it has established that the individuals may not be subject to *in personam* jurisdiction in this district. The websites hosted by both allegedly infringing domain names list physical addresses in France, and it is unclear from the websites whether those defendants would have the minimum contacts with this forum needed to subject the registrants to personal jurisdiction here. *See Con-Way*, 2009 WL 2252128, at *3 (finding that plaintiff could not obtain *in personam* jurisdiction over registrant with listed addresses in Samoa and Germany).

In sum, the facts and law clearly favor Fisher.

---

[5] The ACPA provides that a court may direct a plaintiff in an *in rem* action to publish notice of the action before concluding that the plaintiff is unable to find a person who could be a defendant. *See* 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb). As noted below, the Court orders Fisher to send a copy of its complaint, TRO application, and this order to the registrants of the allegedly infringing domain names at the electronic and physical addresses listed on their websites. But the Court concludes that any additional notice would be unlikely to result in the identification of the registrants, and is therefore not required.

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.     Irreparable Harm

Fisher has also established that it will likely suffer irreparable harm in the absence of emergency injunctive relief. A plaintiff alleging violations of the ACPA is "entitled to a rebuttable presumption of irreparable harm … upon a finding of likelihood of success on the merits … in the case of a … temporary restraining order." 15 U.S.C. § 1116(a); *see also AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022). Fisher's likelihood of success therefore suffices to show irreparable harm at this stage. In any case, Fisher has demonstrated that the use of the allegedly infringing domain names will likely cause reputational harm to Fisher. The websites hosted at the allegedly infringing domain names have been flagged by browsers and security services for potential phishing and actively solicit users' personal information. And due to the domain names' and websites' use of Fisher's marks, consumers will likely be confused, and some may disclose personal information to the domain-name registrants under the false impression that they are providing information to Fisher. Harm to consumers from such phishing will likely, in turn, tarnish Fisher's reputation as a trusted advisory service and asset manager. Such intangible harms to a business's reputation and the resulting loss of consumer goodwill cannot be retroactively cured. *See adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756–57 (9th Cir. 2018).

## III.     Balance of the Equities

The balance of the equities also favors Fisher. In contrast to the irreparable harm Fisher will likely suffer absent emergency relief, "the only hardship that the [registrants] will suffer is lost profits from an activity which has been shown [likely] to be infringing." *Restoration Hardware, Inc. v. Alimia Light,* No. 23-CV-00948-HSG, 2023 WL 3639360, at \*2 (N.D. Cal. May 24, 2023) (quoting *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995)). "[S]uch an argument in defense merits little equitable consideration" because "[a]ny hardship on [the registrants] from the imposition of a temporary restraining order would be the result of their own infringement." *Id.* (citation modified).

## IV.     The Public Interest

Finally, the public interest weighs in Fisher's favor. "Public policy strongly supports

shutting down infringers to protect consumers where there is a likelihood of confusion." *Id.*; *see also Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982) ("In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement.").

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that Fisher's *ex parte* application for a temporary restraining order is **GRANTED**. Because of the strength of Fisher's claims, *California ex rel. Van De Kamp v. Tahoe Regional Planning Agency,* 766 F.2d 1319, 1326 (9th Cir. 1985), and the lack of any realistic likelihood of harm to the registrants, *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999), no security is needed to ensure that respondents will be reimbursed for "costs and damages sustained by … hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

The registrants, users, owners, operators, or persons in control of the domain names "fisher-investments-europe.org" and "fisherinvestmentseurope.net" are hereby **ORDERED** to suspend such domain names and are **ENJOINED AND RESTRAINED** from taking any actions to transfer the domain names from Dynadot to any other registrar, from operating the domain names, or from otherwise using the "Fisher Investments" marks.

Dynadot and any registrar, registry, or domain-name authority with control over the domain names "fisher-investments-europe.org" and "fisherinvestmentseurope.net" are **ORDERED** to lock and disable such domain names, prevent any transfer or modification of the domain names except by further order of this Court, and deposit with the Court documents sufficient to establish the Court's control and authority over the registration and use of the domain names as required by 15 U.S.C. § 1125(d)(2)(D)(i)(I).

This temporary restraining order is effective as of its filing and shall remain in effect until 12:00pm on May 29, 2026. By no later than May 16, 2026, Fisher shall serve a copy of its complaint, the TRO application, and this order on the registrants at all electronic and physical addresses known to Fisher that appear to be associated with the allegedly infringing domain names. Fisher shall also serve a copy of this order on Dynadot by electronic and physical mail.

United States District Court
Northern District of California

Pursuant to Federal Rule of Civil Procedure 65(a)(2), and absent objection, the Court shall advance the trial of Fisher's ACPA claim on the merits and consolidate it with the preliminary-injunction hearing. *See Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 759–60 (9th Cir. 2021) (affirming consolidation of preliminary-injunction hearing and trial on the merits with one week's notice and absent objection from any party); *Morrison & Foerster, LLP v. Wick*, 94 F. Supp. 2d 1125, 1128 (D. Colo. 2000) (consolidating preliminary-injunction and trial in ACPA action). Accordingly, the registrants of the allegedly infringing domain names and any other claimants to the domain names are **ORDERED TO SHOW CAUSE** why a permanent injunction should not issue on May 27, 2026 at 2:00pm. The consolidated hearing and trial will be held in-person in Courtroom 8 of this Court's San José courthouse, located at 280 S. 1st Street, San José, CA 95113. Any response or opposition to Fisher's TRO application and complaint must be filed by no later than May 22, 2026. Any reply shall be filed by May 26, 2026.

**IT IS SO ORDERED.**

Dated: May 15, 2026

P. Casey Pitts
United States District Judge